OPINION JUDGMENT ENTRY
{¶ 1} Defendant appellant Richard Myers appeals from his conviction and sentence in the Richland County Court of Common Pleas on three counts of aiding and abetting rape, felonies of the first degree in violation of R.C. 2907.02, one count of aiding and abetting kidnapping a felony of the first degree in violation of R.C. 2905.10, one count of aiding and abetting tampering with evidence a felony of the third degree in violation of R.C. 2921.12, one count of assault a misdemeanor of the first degree in violation of R.C. 2903.13, and one count of unlawful restraint a misdemeanor of the third degree in violation of R.C.2905.03. He further appeals his adjudication as a sexual predator. The plaintiff appellee is the State of Ohio.
 {¶ 2} Appellant was originally indicted under Case No. 02-CR-554. That indictment remained pending until a new indictment under the present case was filed on April 9, 2003.
 {¶ 3} On Sunday, August 18, 2002, twenty year old Anna Adkins and seventeen year old Ashley Gaines decided to drive from Shelby, Ohio, to Mansfield, Ohio, to make contact with an ex-boyfriend of Ms. Gaines.
 {¶ 4} Sometime around 8:00 p.m., Ms. Adkins drove her 1994 Ford Escort to a gas station so that Ms. Gaines could call her ex-boyfriend from the pay telephone. While on the telephone, the appellant drove his 1995 Dodge Intrepid near the pay phone and began to make small talk with Ms. Gaines. Her convinced Ms. Adkins and Ms. Gaines to follow him to 372 Bell Street, Mansfield, Ohio, in order to become better acquainted. Ms. Adkins parked her car directly in front of the residence.
 {¶ 5} The group drank beer and visited while at the residence.
 {¶ 6} The group left the residence on Bell Street to go to George Keeton's house located on Seminole Avenue, Mansfield, Ohio. Mr. Keeton is a co-defendant of the appellant. Appellant drove the girls in his 1995 Dodge Intrepid to Keeton's residence.
 {¶ 7} At the residence, the girls met George Keeton, Jason Flannery, Sonny Flannery, and John Lykins. Consequently, Ms. Adkins, Ms. Gaines, appellant, Jason Flannery, George Keeton and another person left the residence in a large white van. The party decided to travel to a club called "Fantasy Land" located in Bucyrus, Ohio. A stop was made at a Speedway gas station to purchase some pop to mix with Everclear, a highly potent alcoholic beverage. Keeton paid everyone's ten dollar cover charge, purchased a V.I.P. lap dance, and bought all the non-alcoholic beverages while at the club.
 {¶ 8} Sonny Flannery then drove everyone back to Mansfield where he stopped his vehicle at the Speedway located at Route 30 and Timble Road. John Lykins and Sonny Flannery left in Mr. Flannery's van. The appellant George Keeton, Jason, Flannery, Ms. Adkins, and Ms. Gaines continued to party. Mr. Keeton became upset about some missing money and drugs while at the gas station. After he calmed down, the five individuals agreed they would take a ride out into the country. Mr. Keeton once again became upset about his missing money and drugs. He turned to the girls in the backseat and began yelling at them that he was thug and he was going to kill them both, he would never get caught, and their bodies would be dumped in a lake where no one would ever find them.
 {¶ 9} The girls were pleading for their lives. Ms. Adkins attempted to exit the motor vehicle as it was approaching a stop sign. Mr. Keeton told the appellant to speed up the vehicle. The appellant sped up the vehicle causing the car door to hit Ms. Adkins' leg. The car, with the doors now locked by appellant, then proceeded to drive without stopping at any of the stop signs. At one point, Ms. Adkins and Ms. Gaines were allowed to get out of the car. They went to a home, knocked on a door, but there was no response. The appellant's car circled around and located the girls. The appellant and Mr. Keeton assured the girls that he had now calmed down. Ms. Adkins and Ms. Gainer did not know where they were at this time. They decided to get back into the vehicle to allow the appellant to take them back to their car which was still located at the Bell Street residence. A short while later, Mr. Keeton again began complaining about his missing money and drugs. He told Ms. Adkins and Ms. Gaines to take off their clothes because he wanted to check for his missing money. Mr. Keeton tossed the girls clothing and a book bag belonging to Ms. Gaines out of the car. Some of the clothing was later found in Richland County, Ohio, by a deputy sheriff.
 {¶ 10} Keeton and Jason Flannery started punching the girls with closed fists, throwing approximately twelve blows, striking each girl approximately six times each in their faces. Appellant turned off the car's interior lights and the headlights. Keeton then forced the girls to perform various sexual acts. Keeton and Flannery inserted their fingers inside Ms. Adkins' vagina. Appellant continued to drive the care. Mr. Keeton told the appellant to stop the car so that they could toss Ms. Adkins out onto the street. The appellant complied with this request. Jason Flannery held Ms. Gaines by her hair to prevent her from escaping from the vehicle.
 {¶ 11} Mr. Keeton then forced Ms. Gaines to perform fellatio upon him. Mr. Flannery who was in the back seat, began inserting his fingers inside of Ms. Gaines' vagina and anus.
 {¶ 12} Keeton then ordered Ms. Gaines to have oral sex with appellant and Flannery. While still driving his car, the appellant voluntarily opened up his pants and made his penis available for Ms. Gaines. Keeton forced Ms. Gaines to perform fellatio upon appellant and upon Jason Flannery. While this was occurring, Keeton inserted his fingers inside Ms. Gaines' vagina and anus.
 {¶ 13} Approximately forty-five minutes after Ms. Adkins was let go, Keeton told the appellant to stop the car and Jason Flannery kicked Ms. Gaines out on to the street.
 {¶ 14} Appellant then drove Keeton and Flannery back to 372 Bell Street, Mansfield, Ohio, where Ms. Adkins had left her car. Keeton and Flannery broke a window and moved the car down the street.
 {¶ 15} A short time later, the appellant and Mr. Flannery were arrested by the Mansfield Police Department. The appellant was stopped for having an obstructed license plate. His car also matched a description put out in a police bulletin from Ashland County about a possible abduction.
 {¶ 16} A jury found the appellant guilty of aiding and abetting the kidnapping of Ashley Gaines, three counts of aiding and abetting rape, one count of aiding and abetting tampering with evidence. The jury found the appellant not guilty of aiding and abetting the kidnapping of Anna Adkins, however, the jury found him guilty of the lesser offense of unlawful restraint. The jury further found appellant not guilty of aiding and abetting the felonious assault of Anna Adkins, however, the jury found him guilty of the lesser offense of assault.
 {¶ 17} On May 28, 2002, the defendant was sentenced to a term of eight years on each count of rape. Those sentences were to run concurrent. He was sentenced to a term of eight years for aiding and abetting kidnapping. That sentence was made consecutive to the trial court's sentence on the aiding and abetting rape charges. On the aiding and abetting tampering with evidence, the court sentenced appellant to a two year consecutive term. The court sentenced the appellant to a six-month term on the aiding and abetting assault and a sixty-day term on the unlawful restraint. Both misdemeanor sentences were to run concurrent with the felony sentences. Appellant was also determined to be a sexual predator.
 {¶ 18} Appellant timely appealed and herein raises the following seventeen assignments of error for our consideration:
 {¶ 19} "Defendant was denied due process of law when his motion to dismiss was denied.
 {¶ 20} "Defendant was denied due process of law when the court overruled defendant's motion to suppress.
 {¶ 21} "Defendant was denied due process of law when the court overruled his motion to suppress intercepted phone conversations.
 {¶ 22} "Defendant was denied due process of law when the court permitted witnesses to state their opinions as to the truth and veracity of the claims made by ashley gaines and/or Anna Adkins.
 {¶ 23} "Defendant was denied due process of law when the court admitted an unauthenticated letter.
 {¶ 24} "Defendant was denied due process of law when the court permitted experimental evidence.
 {¶ 25} "Defendant was denied due process of law when the court permitted reports of witnesses to be submitted after the witnesses had testified to the matters contained in those reports.
 {¶ 26} "Defendant was denied due process of law and a fair trial by reason of improper prosecutorial argument.
 {¶ 27} "Defendant was denied due process of law when the court answered a jury question without notifying counsel and making a record in open court.
 {¶ 28} "Defendant was denied due process of law when the court refused to incorporate defendant's special jury instructions into its general charge.
 {¶ 29} "Defendant was denied due process of law when the court refused to instruct on the lesser offense of gross sexual imposition.
 {¶ 30} "Defendant was denied due process of law when no element of the offense was committed within richland county.
 {¶ 31} "Defendant was denied due process of law when he was convicted as an aider and abettor.
 {¶ 32} "Defendant was denied due process of law when he was convicted of tampering with evidence.
 {¶ 33} "Defendant was denied due process of law and subjected to multiple punishments in violation of his constitutional rights when the court failed to merge kidnapping and rape convictions.
 {¶ 34} "Defendant was denied due process of law when the court failed to sentence defendant to a minimum sentence and improperly imposed consecutive sentences.
 {¶ 35} "Defendant was denied due process of law when he was adjudicated to be a sexual predator."
 I. {¶ 36} In his first assignment of error, Appellant maintains that the trial court erred when it failed to grant his motion to dismiss based upon a violation of his right to a speedy trial. We disagree.
 {¶ 37} A defendant's right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, and is made obligatory on the States by theFourteenth Amendment. Klopfer v. North Carolina (1967),386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. Article I, Section 10 of the Ohio Constitution, also affords an accused the same guarantees as the Sixth and Fourteenth Amendments. See State v. Butler (1969),19 Ohio St.2d 55, 249 N.E.2d 818.
 {¶ 38} The statutory provisions guaranteeing an accused's right to be tried without inordinate delay are found in R.C.2945.71 to 2945.73. R.C. 2945.71 states in part:
 {¶ 39} "(C) A person against whom a charge of felony is pending:" * * * "(2) Shall be brought to trial within two hundred seventy days after his arrest." * * *
 {¶ 40} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. * * *" {¶ 41} Appellant specifically contends dismissal of the indictment in the case sub judice was required on the grounds that he was not brought to trial within ninety days under the "triple-count" provision of R.C. 2945.71(E). The State maintains that the triple-count provision does not apply in the case at bar because a parole holder was placed on appellant on August 21, 2002.
 {¶ 42} In State v. Brown (1992), 64 Ohio St.3d 476,1992-Ohio-96, 597 N.E.2d 97, the Ohio Supreme Court stated "[t]he existence of a valid parole holder prevents application of the triple-count provisions of R.C. 2945.71(E)." Id. at 479,597 N.E.2d at 99. Appellant conceded in the trial court that a holder had been placed upon him, although the probation violation was not formally filed with the court until May 27, 2003. (Sent. T., May 28, 2003 at 23). Appellant does not contend that he was not brought to trial within 270 days.
 {¶ 43} Appellant's First Assignment of Error is overruled.
 II. {¶ 44} In his second assignment of error, Appellant maintains that the trial court erred by failing to grant his motion to suppress. Specifically, he argues that the stop of the motor vehicle he was driving and his subsequent detention were without specific and articulate reasons to justify an investigatory stop thereby violating the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution. For the reasons that follow, we disagree.
 {¶ 45} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 485; Statev. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657,1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed denovo on appeal."
 {¶ 46} A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth and Fourteenth Amendment to the United States Constitution. Delaware v. Prouse (1979), 440 U.S. 648;State v. Heinrichs (1988) 46, Ohio App.3d 63-65. At the very least — such justifications requires that the stopping officer have specific articulable facts indicating the stop is reasonable. State v. Chatton (1984), 11 Ohio St.3d 59.
 {¶ 47} Two reasons were cited for the initial stop of appellant's vehicle. The officer testified that the license plate on the vehicle was obstructed. (Transcript, Suppressing Hearing, March 24, 2003 at 5). [Hereinafter "ST."]. The second reason for the stop was based upon a police radio bulletin issued from Ashland County concerning a possible abduction. (Id. at 4). The information originating from Ashland County came from one of the victims of the crime. Appellant's car matched the description of the vehicle in the radio bulletin. The radio broadcast further described the occupants of the vehicle as two white males, one with a bulldog tattoo. (Id. at 9). The officer further indicated that before making the stop further bulletins named the appellant as a suspect in the Ashland County crime. (Id.).
 {¶ 48} In United States v. Hensley (1985), 469 U.S. 221,105 S.Ct. 675, the United States Supreme Court noted "* * * where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes * * * Accordingly, it is enough to say that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then aTerry stop may be made to investigate that suspicion." Id. at 228, 105 S.Ct. at 680. The Court held "[a]ssuming the police make a Terry stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop, UnitedStates v. Robinson, supra, and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." Id. at 232, 105 S.Ct. at 682.
 {¶ 49} R.C. 2935.04 provides "[w]hen a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."
 {¶ 50} "Where a police officer has received information over the police radio and that information is such as to give the officer reasonable grounds to believe a felony has been committed, such officer has probable cause to make an arrest."State v. Fultz (1968), 13 Ohio St.2d 79, 234 N.E.2d 593, syllabus at para. 2.
 {¶ 51} In the case at bar, the officer was justified in stopping appellant's vehicle to investigate the traffic violation. The officer was further justified in her reliance upon the police bulletin in conducting a Terry stop and investigation. Further, the officer was authorized to arrest appellant when the information obtained during the stop revealed that the appellant's car matched the description given by the victim, the crime alleged to have occurred was a felony abduction, the appellant's name matched the name given in the police bulletin, and the descriptions of the suspects were also verified. Under the facts available to the officer, reasonable grounds to believe a felony had been committed were present at the time of the arrest. The search of the vehicle was valid as the officer was permitted to take such steps as were necessary to protect her personal safety, including a limited search of the passenger compartment of appellant's vehicle for weapons.Michigan v. Long (1983), 463 U.S. 1032, 1049-50,103 S.Ct. 3469, 3480-81. As the officer was authorized to search the passenger compartment she was entitled to seize any evidence in plain view.
 {¶ 52} Accordingly, we overrule appellant's second assignment of error.
 III. {¶ 53} In his third assignment of error, appellant argues that the trial court erred by not suppressing tape recordings of his telephone conversations.
 {¶ 54} The conversations at issue were between the appellant and members of his family. The conversations were recorded while appellant was incarcerated in the Richland County Jail.
 {¶ 55} The jail utilizes an "Evercom" recording system. (T. at 928). This system clearly informs both parties to a telephone conversation that the call is originating from the jail, and further that the call is subject to monitoring and recording. (Id. at 928-29).
 {¶ 56} Monitoring and recording telephone conversations are a search within the meaning of the Fourth Amendment. Katz v.United States (1967), 389 U.S. 347, 353, 88 S.Ct. 507, 512,19 L.Ed.2d 576, 582-583. To invoke the exclusionary rule, appellant must establish a violation of his Fourth Amendment rights.
 {¶ 57} "In order for a party to succeed in challenging a search on Fourth Amendment grounds: (1) that party must have a subjective expectation of privacy in the object of the search, and (2) society must be prepared to recognize that expectation as reasonable." Stone v. Stow (1992), 64 Ohio St.3d 156, 163-164,593 N.E.2d 294, 299-300. In State v. Smith (1997),117 Ohio App.3d 656, 691 N.E.2d 324, the court addressed the issue of recording prisoner telephone conversations. The court noted "[w]hether the monitoring of inmate phone calls violates theFourth Amendment appears to be an issue of first impression in this jurisdiction. With near unanimity, federal and state courts have upheld the practice. See, e.g., United States v. Van Poyck
(C.A. 9, 1996), 77 F.3d 285; United States v. Paul (C.A. 6, 1980), 614 F.2d 115; State v. Fox (Iowa 1992), 493 N.W.2d 829.
 {¶ 58} "These courts have upheld the practice on one of two independent grounds. Some courts have held that when placed on notice of telephone monitoring, a prisoner does not have the requisite subjective expectation of privacy to incur aFourth Amendment violation. See Poyck, 77 F.3d at 290; United Statesv. Amen (C.A. 2, 1987), 831 F.2d 373, 379. Other courts have held that society is not willing to recognize any such subjective expectation of privacy because the institutional interest in security outweighs the prisoner's privacy rights. See Fox,493 N.W.2d at 832; United States v. Willoughby (C.A. 2, 1988),860 F.2d 15, 21.
 {¶ 59} "We agree with both views and accordingly hold (1) that where a prisoner has notice of a telephone monitoring practice and elects to place a telephone call, he has no subjective expectation of privacy and (2) that a jail or prison is permitted under the Fourth Amendment to monitor telephone calls placed by its inmates in the interest of institutional security." Id. at 661, 691 N.E.2d 327. We agree with the rationale espoused by the Smith court. Appellant was on notice that his conversations may be monitored and recorded. He therefore had no reasonable expectation of privacy. Further the jail is permitted, absent a countervailing interest such as the attorney client privilege, to monitor and record telephone calls in the interest of institutional security.
 {¶ 60} Appellant's third assignment of error is overruled.
 IV. {¶ 61} In his fourth assignment of error appellant argues that the trial court erred by permitting a S.A.N.E. nurse and emergency room physician to testify that the findings of each were consistent with the history given by Anna Adkins.
 {¶ 62} We have previously found this type of testimony is permissible. State v. Bragg (April 15, 2004), 5th Dist. No. 2003-CA-00065; State v. Crum (Oct. 26, 1998), 5th Dist. No. 97-CA-0134.
 {¶ 63} Appellant further argues that the trial court erred by permitting the investigating police officer to testify that the statement he had taken from Ms. Adkins was consistent with an earlier interview.
 {¶ 64} The detective conducted an initial interview with Ms. Adkins that was not tape recorded. Over a week later he interviewed her and this time made a recording of the interview. The testimony objected to by appellant was that the second statement was consistent with the first statement (T. at 910). The officer was testifying to a fact, not expressing an opinion about the credibility or veracity of the complainant. The appellant's argument is without merit.
 {¶ 65} Appellant's fourth assignment of error is overruled.
 V. {¶ 66} In his fifth assignment of error the appellant argues that the trial court erred by not excluding from evidence at trial certain letters signed by "Lil Bro." We disagree.
 {¶ 67} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
 {¶ 68} The basis for appellant's objection is that the letter was not signed in his name, nor was any handwriting analysis comparison submitted to establish that he wrote the letter.
 {¶ 69} In United States v. Reilly (3rd Cir. 1994),33 F.3d 1396, the Court noted "[a] letter or telegram `may be authenticated by its contents with or without the aid of physical characteristics if the letter is shown to contain information that persons other than the purported sender are not likely to possess.' Graham, Federal Practice and Procedure: Evidence § 6825 at 865-68; see also United States v. Console, 13 F.3d 641, 661
(3d Cir. 1993) ("`a document or telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him.'") (quoting Fed.R.Evid. 901 advisory committee note ex. (4)), cert.denied, 511 U.S. 1076, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994); 5 Weinstein's Evidence ¶ 901(b)(4)[01] at 901-60 (`A letter, for example, can be shown to have emanated from a particular person or business by the fact that it would be unlikely for anyone other than the purported writer to be familiar with its subject matter and content.'). `Although we do not know precisely how many people had the information contained in the proffered evidence, we suspect, as noted above, that the number is small. Therefore, the nature of the information in the documents further supports their authenticity.' McQueeney v. Wilmington TrustCo., 779 F.2d at 930." United States v. Reilly, supra,33 F.3d at 1407.
 {¶ 70} In the case at bar, State's Exhibit 21 is a letter addressed to one of appellant's co-defendants, George Keeton. (T. at 726). The letter was discovered by corrections officers during a surprise search for contraband conducted at the jail. (T. at 741). The letter was signed "Lil Bro." (T. at 746). The letter detailed a plan to have all co-defendants testify to a story that any sexual contact with the victims was consensual. (T. at 746-53). The victims in this case testified that the sexual assaults occurred in appellant's car. (T. at 320-326).
 {¶ 71} The letter specifically mentions the name "Keisha" (T. at 746). Appellant's sister is named "Keisha." (T at 930; 975). The letter specifically mentions "my car." (T. at 747; 749; 752). It is written from the perspective of the person driving the car. (Id.). Many of the facts stated in the letter mirror the sequence of events testified to by the victims. The letter mentions the other co-defendants by name. (T. at 747). The letter mentions that "John Boy and Sonny" left and "me, you and Jason and the girls still wanted to get drunk . . . so we get into my car. . . ." (T. at 749). A correction officer from the jail testified that several times she overhead inmates referring to appellant as "Lil Bro." (T. at 744-45).
 {¶ 72} ". . . [T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic, United States v. Natale, 526 F.2d 1160, 1173 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); United States v. King, 472 F.2d 1, 7 (9th Cir.), cert. denied sub nom. Arias v. United States, 414 U.S. 864, 94 S.Ct. 174,38 L.Ed.2d 84 (1973); United States v. Addonizio, 451 F.2d 49, 69
(3d Cir.), cert. denied, 405 U.S. 936, 92 S.Ct. 949,30 L.Ed.2d 812 (1972); United States v. Tellier, 255 F.2d 441, 448 (2d Cir. 1958); 5 J. Wigmore, Evidence s 2135 (3d ed. 1940). See also Fed.R.Ev. 901(a) (not in effect at time of trial)." UnitedStates v. Goichman (3rd Cir 1976), 547 F.2d 778, 784.
 {¶ 73} We find that there was sufficient evidence to allow the State's Exhibit 21 to be admitted into evidence. We further find that the record contains substantial evidence from which the jury could infer that the letter was written by appellant. The appellant had a full opportunity to cross-examine the corrections officer and to challenge his authorship of the letter. The trial court did not abuse its discretion in admitting the letter into evidence.
 {¶ 74} Appellant's fifth assignment of error is overruled.
 VI {¶ 75} In his sixth assignment of error, appellant maintains that the trial court erred by allowing a police officer to testify as to the possible time and route of travel taken by appellant on the night in question. Appellant makes absolutely no argument as to how he was prejudiced by this testimony. Appellant makes no argument or showing that the result of the trial would have been different had the court excluded this evidence.
 {¶ 76} The admission or rejection of evidence concerning out-of-court experiments is a matter peculiarly within the discretion of the trial court, and reviewing courts will not interfere absent an abuse of discretion. Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 529 N.E.2d 1382, paragraph two of the syllabus. For out-of-court experiments to be admissible it is not necessary that they be performed under identical conditions to those existing at the time of the occurrence in question; it is sufficient if there is a substantial similarity. State v.Sheppard (1955), 100 Ohio App. 399, 413, 128 N.E.2d 504, appeal dismissed, 164 Ohio St. 428, 131 N.E.2d 837.
 {¶ 77} In the case at bar the trips made by the officer were substantially similar to the trip that the appellant allegedly made on the night of the attack. Any dissimilarity in conditions goes to the weight, not the admissibility, of the evidence.State v. McFadden (1982), 7 Ohio App.3d 215, 455 N.E.2d 1.
 {¶ 78} We find the trial court did not abuse its discretion by permitting the officer's testimony. Appellant's sixth assignment of error is overruled.
 VII. {¶ 79} In his seventh assignment of error, appellant argues that the trial court erred by permitting the admission into evidence reports of witnesses who had testified concerning the matters contained in the reports. Appellant does not specifically identify in this assignment of error the reports which form the basis of his objection.
 {¶ 80} The reports admitted at trial concern D.N.A. testing performed on evidence gathered in the case, and a "presumptive blood test". (T. at 822; 1059; 822). The individuals who performed each test were present in court and subject to cross-examination.
 {¶ 81} "The best explanation and gathering of authorities on the issue of the admission of laboratory reports are two law review articles written by Professor Paul C. Giannelli of Case Western Reserve University Law School. See Giannelli, TheAdmissibility of Laboratory Reports in Criminal Trials: TheReliability of Scientific Proof, 49 Ohio St.L.J. 671 (1988); Giannelli, Expert Testimony and the Confrontation Clause, 22 Cap.U.L.Rev. 45 (1993).
 {¶ 82} "Professor Giannelli summarizes the history of admissibility of laboratory reports in the following manner:
 {¶ 83} "Laboratory reports are typically offered in evidence as either business records or public records, both of which are recognized exceptions to the hearsay rule." State v. Crow
(1999), 266 Kan. 690, 699, 974 P.2d 100, 107-08.
 {¶ 84} The reason for precluding the admission of laboratory reports into evidence at trial as self-authenticating, or upon the authentication of a record custodian is a concern that an accused's right to confront and cross-examine will be compromised. Those concerns do not exist in this case. The appellant had the opportunity to confront and cross-exam the individuals who prepared the reports. See, State v. Manke (N.D. 1982), 328 N.W.2d 799.
 {¶ 85} The appellant's reliance on State v. Welling (Nov. 18, 1985), 12th Dist. No. CA85-07-079 is misleading. TheWelling case concerned the admission of prior testimony, not reports. In State v. Hubbard (2002), 150 Ohio App.3d 623,2002-Ohio-6904, 782 N.E.2d 674 the Court noted that in Welling: "the appellate court's ruling that this was reversible error was not based solely on the admission of the written transcript to the jury. The ruling was based upon the unavailability of the witness, the admission of the written prior testimony to the jury, and the fact that there was conflicting testimony in the transcript and the oral testimony. Furthermore, the Twelfth District does not always hold that admitting the transcript of prior testimony to the jury in a written form is reversible error. Where the jury's finding was adequately supported by other competent, credible evidence it is not reversible error.Whitaker v. Weinrich (Dec. 14, 1987), 12th Dist. No. CA86-12-179, 1987 WL 28437." Id. at 635, 782 N.E.2d at 683.
 {¶ 86} None of the factors present in Welling are even presented in this case.
 {¶ 87} The remaining items of evidence to which appellant objected to at trial were the letters referred to in Assignment of Error V and his tape recorded telephone conversations referred to in Assignment of Error III. The admissibility of those items has previously been addressed.
 {¶ 88} We find no abuse of discretion by the trial court in the admission of the reports into evidence.
 {¶ 89} Appellant's seventh assignment of error is overruled.
 VIII. {¶ 90} In his eighth assignment of error appellant argues that the prosecutor engaged in misconduct by 1). commenting on his failure to testify; 2). expressing his opinion of appellant's guilt; 3). vouching for the credibility of witnesses; and 4). appealing to the passion of the jury.
 {¶ 91} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982),69 Ohio St.2d 583, 589, 433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v. Maurer (1984), 15 Ohio St.3d 239,269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty.State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227.
Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning."Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647,94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 92} In his brief the following statements are specified as being improper:
 {¶ 93} 1). "there has been absolutely no words out of the mouth of Richard Myers, or anyone else, that Richard Myers was threatened in any way to do what he did on that night" (T. at 1156-57).
 {¶ 94} 2). "there is absolutely no believable evidence to the contrary to what they said" (T. at 1153).
 {¶ 95} 3). "Richard Myers is guilty beyond a reasonable doubt . . . of each and every on of these nine offenses. (T. at 1151).
 {¶ 96} 4). "Richard Myers is guilty, beyond a reasonable doubt, of every one of the nine crimes he is charged with here. (T. at 1157).
 {¶ 97} 5). "In order to find Richard Myers not guilty of these horrible crimes, you must find that Anna Adkins and Ashley Gaines came to this court, took an oath to tell the truth, sat in that witnesses box, and lied to you. . . . It is clearly impossible to find Richard Myers not guilty of these horrible crimes unless you find that Anna and Ashley are total and complete bold-face liars." (T. at 1152).
 {¶ 98} 6). "Justice requires you to find Richard Myers guilty of two kidnappings, four rapes, two felonious assaults and tampering with evidence." (T. at 1162).
 {¶ 99} The state may comment upon a defendant's failure to offer evidence in support of its case. State v. Collins (2000),89 Ohio St.3d 524, 733 N.E.2d 1118. "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29,733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.
 {¶ 100} The appellant in the case at bar mischaracterizes the prosecutor's statements. Although the appellant did not testify, the State did admit several recorded telephone conversations between the appellant and family members. (See Assignment of Error III, supra). The State further admitted into evidence at trial an oral statement made by the appellant to the police. (T. at 775-81).
 {¶ 101} When taken in context, it is clear that the prosecutor was referring to the fact that in all the statement made by the appellant there is no mention of his being threatened, intimidated or coerced into taking any action or refraining from acting on the night in question. (T. at 1156-1157). Accordingly, the prosecutor was commenting on the lack of evidence and not on the fact that appellant had not testified. Further, the jury was instructed that they were not to consider the fact that appellant did not testify at trial. (T. at 1192).
 {¶ 102} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Appellant was not convicted as charged in the indictment. The appellant was found not guilty of aiding and abetting the kidnapping of Anna Adkins. (T. at 1244). He was found not guilty of the rape of Ashley Gaines, although he was found guilty of aiding and abetting in her rape. (T. at 1244-45). The jury found the appellant guilty of two lesser offenses. (T. at 1245-46). Clearly, the jury was not swayed or influenced by the prosecutor's statements.
 {¶ 103} Appellant's eighth assignment of error is overruled.
 IX. {¶ 104} In his ninth assignment of error appellant argues that it was improper for the trial judge to answer a question posed by the jury concerning the meaning of the word "indirect" without first consulting with appellant. We disagree.
 {¶ 105} Appellant does not argue in his brief that the instruction given by the trial court was incorrect or misleading, only that he was not present during the communication. Counsel was notified immediately that the trial judge, in answer to a question from the jury, instructed the jury that the term "indirect" means "implied". (Id.). Appellant would simply have requested that the judge tell the jurors that they have been given the definition of "indirect" and no further definition would be given. (Id.). The court disagreed and noted that the definition of "indirect" had not previously been given. (Id.). The trial judge's response indicates that even if counsel had been present, he would have proceeded as he did with the answer. (T. at 1226-1227).
 {¶ 106} In United States v. Gagnon, 470 U.S. 522,105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985), the Supreme Court stated: "`[T]he mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.'" Quoting Rushen v. Spain,464 U.S. 114, 125-26, 104 S.Ct. 453, 459, 78 L.Ed.2d 267 (1983) (Stevens, J., concurring in judgment). A defendant has a constitutional right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts,291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).
 {¶ 107} In United States v. Giacalone (6th Cir. 1978),588 F.2d 1158, 1164-65, the court noted: "[a]lthough it may have been technically in error for the trial judge to have made even this limited response to the jury, the error was not under the circumstances prejudicial. As we held in United States v. Reynolds, 489 F.2d 4 (6th Cir. 1973), Cert. denied, 416 U.S. 988,94 S.Ct. 2395, 40 L.Ed.2d 766 (1974), the rule requiring that a defendant be present at all stages of the trial must be considered with Rule 52(a), Fed.R.Crim.P., providing that harmless error is to be disregarded, citing United States v. Gradsky, 434 F.2d 880 (5th Cir. 1970), Cert. denied,401 U.S. 925, 91 S.Ct. 884, 27 L.Ed.2d 828 (1971), 409 U.S. 894 (1972); and Yates v. United States, 418 F.2d 1228 (6th Cir. 1969). Thus we held that a forbidden communication will not always be reversible and that the standard is whether there is "any reasonable possibility of prejudice." 489 F.2d at 8, Quoting Wade v. United States, 142 U.S.App.D.C. 356, 441 F.2d 1046, 1050
(1971)."
 {¶ 108} We find that no reasonable possibility of prejudice occurred under the facts of this case.
 {¶ 109} Appellant's ninth assignment of error is overruled.
 X. {¶ 110} In his tenth assignment of error appellant argues that the trial court erred by failing to instruct the jury on the affirmative defense of duress and in refusing to instruct the jury on "mere presence" in conjunction with the instruction on aiding and abetting. We disagree.
 {¶ 111} Duress is an affirmative defense. State v. Getsy
(1998), 84 Ohio St.3d 180, 1998-Ohio-533, 702 N.E.2d 866; Statev. Cross (1979), 58 Ohio St.2d 482, 391 N.E.2d 319. The appellant had the burden of going forward with evidence of a nature and quality sufficient to raise the defense. R.C. 2901.05;State v. Melchior (1978), 56 Ohio St.2d 15, 20, 11,381 N.E.2d 195, 199. In construing the phrase "burden of going forward with the evidence," the Ohio Supreme Court stated in State v.Robinson (1976), 47 Ohio St.2d 103, 111-112, 351 N.E.2d 88, 94, that in order for the defendant to successfully raise an affirmative defense, "evidence of a nature and quality sufficient to raise the issue must be introduced." Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted. Melchior, supra, 56 Ohio St.2d at 20,381 N.E.2d at 199. Getsy, supra, 84 Ohio St.3d at 198-99,702 N.E.2d at 885.
 {¶ 112} "One of the essential features of the defense of duress is a sense of immediate, imminent death, or serious bodily injury if the actor does not commit the act as instructed. SeeState v. Cross (1979), 58 Ohio St.2d 482, 487, 12 O.O.3d 396, 399, 391 N.E.2d 319, 323. The force used to compel the actor's conduct must remain constant; controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw. See State v. Good (1960), 110 Ohio App. 415, 11 O.O.2d 459,165 N.E.2d 28." Getsy, supra at 199, 702 N.E.2d 885.
 {¶ 113} It is within the trial court's sound discretion to determine whether the evidence presented at trial is sufficient to require a particular jury instruction. State v. Mitts
(1998), 81 Ohio St.3d 223, 228, 690 N.E.2d 522. An appellate court can reverse a trial court's refusal to give a defendant's requested instruction only upon a showing of abuse of discretion by the trial court. State v. Midwest Pride IV Inc. (1998),131 Ohio App.3d 1, 15, 721 N.E.2d 458.
 {¶ 114} Applying this standard it is apparent that the appellant failed to show that his criminal conduct occurred as a result of a continuous threat from George Keeton, or anyone else, which, because of his fear of bodily harm or death, controlled his will and compelled him to drive the car, expose his penis, turn the car lights off to avoid detection, accelerate the vehicle to prevent the escape of the victims, drive the co-defendants to where the victims' car was located, and to entice the victims to enter the car and become acquainted with Keeton and the others. The meager evidence cited to by appellant does not rise to the level of "a sense of imminent, immediate and impending death or serious bodily injury." Cross,58 Ohio St.2d 482, 487, 12 O.O.3d 396, 399, 391 N.E.2d 319, 323.
 {¶ 115} Appellant did not satisfy his burden of presenting evidence of a nature and quality sufficient to raise the defense of duress and merit an instruction. Therefore, the trial court did not err in failing to instruct on the affirmative defense of duress.
 {¶ 116} Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See State v. Johnson (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. "`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" State v. Mendoza (2000), 137 Ohio App.3d 336,342, 738 N.E.2d 822, quoting State v. Stepp (1997),117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342.
 {¶ 117} Appellant was not a mere bystander who was along for the ride. Appellant drove the car. Appellant actions previously detailed indicate that he was not "merely associated" with the other co-defendants. His presence during the attacks, coupled with his conduct both before and after the attacks were committed, were enough to merit the trial court's refusal to instruct the jury on the "mere presence" defense.
 {¶ 118} Appellant's tenth assignment of error is overruled.
 XI. {¶ 119} In his eleventh assignment of error, appellant argues that the trial court erred by refusing to instruct the jury on the lesser included offense of gross sexual imposition. The appellant does not cite to any testimony or evidence contained in the transcript that would support this charge.
 {¶ 120} A charge on a "lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas,40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus; Statev. Kidder (1987), 32 Ohio St.3d 279, 513 N.E.2d 311.
 {¶ 121} Gross sexual imposition, R.C. 2907.05(A)(4), is a lesser included offense of rape, R.C. 2907.02(A)(1)(b). SeeState v. Johnson (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082, paragraph one of the syllabus. However, an instruction on a lesser included offense should be given only when the evidence warrants it. State v. Thomas, 40 Ohio St.3d 213,533 N.E.2d 286, paragraph two of the syllabus.
 {¶ 122} "Sexual conduct" with another is an element of rape, whereas only "sexual contact" is required to prove gross sexual imposition. R.C. 2907.02 and 2907.05. R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 123} The trial court was correct to refuse appellant's request for a jury instruction on Gross Sexual Imposition because the evidence established that there was penetration. (T. at 456-460; 943-44; 960; 982-83; 985).
 {¶ 124} Based on the foregoing, we find that the lesser included offense of gross sexual imposition was not reasonably supported by the evidence, and the trial court did not err by refusing to give this instruction.
 {¶ 125} Appellant's eleventh assignment of error is overruled.
 XII. {¶ 126} In his twelfth assignment of error appellant argues that Richland County was not the proper venue to prosecute him. We disagree.
 {¶ 127} In State v. Beuke (1988), 38 Ohio St.3d 29, 41,526 N.E.2d 274, 287, the Ohio Supreme Court stated: "[t]his court articulated Ohio law relevant to such claims in State v. Draggo
(1981), 65 Ohio St.2d 88, 89-91, 19 O.O.3d 294, 295-296,418 N.E.2d 1343, 1345-1346. The relevant statute, R.C. 2901.12, provides, in subsection (G), that venue lies in any jurisdiction in which an offense or any element of an offense is committed; and further provides, in subsection (H), that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. Prima facie evidence of a course of criminal conduct may be established through proof the offenses involved the same or similar modus operandi. R.C. 2901.12(H) (5)."
 {¶ 128} Additionally, the crimes occurred in a moving vehicle. R.C. 2901.12(B) states: "When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed."
 {¶ 129} There is no dispute that the appellant's car traveled through Richland and Ashland counties. The jury instruction given by the trial court was a correct statement of the law.
 {¶ 130} Appellant's twelfth assignment of error is overruled.
 XIII. {¶ 131} In his thirteenth assignment of error appellant argues that he was denied due process of law when he was convicted of aiding and abetting.
 {¶ 132} This argument has previously been addressed in Assignment of Error X, supra. For the reasons stated therein appellant's thirteenth assignment of error is overruled.
 XIV. {¶ 133} In his fourteenth assignment of error appellant argues that he was denied due process of law when he was convicted of tampering with evidence. We disagree.
 {¶ 134} The appellant was not convicted of tampering with evidence. Appellant was convicted of aiding and abetting tampering with evidence. (T. at 1245).
 {¶ 135} R.C. 2921.12, Tampering with evidence, provides in relevant part "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation . . ."
 {¶ 136} Appellant informed the co-defendant's of the location of the victims' car. (T. at 946). Appellant drove the co-defendants back to the location where the victims had parked their car. (Id.). Appellant was aware that the co-defendants were going to move the victims' car. (Id.). He waited for the co-defendants to move the car. (Id. at 962). Further, State's Exhibit 21 refers to appellant's active participation in moving the vehicle. (T. at 752).
 {¶ 137} The jury had sufficient evidence to conclude that appellant had aided and abetted the co-defendants, if not directly participating in the tampering of evidence. See, Statev. Jones (Nov. 10, 2003), 10th Dist. No. 02AP-1390,2003-Ohio-5994.
 {¶ 138} Appellant's fourteenth assignment of error is overruled.
 XV. {¶ 139} In his fifteenth assignment of error appellant maintains that the trial court erred by not merging the rape and kidnapping counts for sentencing purposes. We disagree.
 {¶ 140} In State v. Brown (1984), 12 Ohio St.3d 147,456 N.E.2d 889, the Ohio Supreme Court set forth the following test to determine whether kidnapping and rape are subject to merger: "[i]n State v. Donald (1979), 57 Ohio St.2d 73, 386 N.E.2d 1341
[11 O.O.3d 242], this court ruled that rape and kidnapping were offenses of similar import for purposes of application of R.C.2941.25(A). In State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345 [14 O.O.3d 373], we outlined under what circumstances convictions for both kidnapping and another offense of the same or similar kind would be allowed to stand The syllabus inLogan, supra, states in part:
 {¶ 141} `In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 {¶ 142} `(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions; * * *.'
 {¶ 143} Thus, the general rule is that where the kidnapping offense and underlying similar offense are committed separately and with a separate, different animus, convictions for both offenses will be sustained. See, also, State v. Price (1979),60 Ohio St.2d 136, 398 N.E.2d 772 [14 O.O.3d 379], paragraph five of the syllabus." Id. at 150-51, 456 N.E.2d 892-93.
 {¶ 144} The question becomes whether appellant possessed an animus in committing the rape offense separate from the kidnapping offense.
 {¶ 145} Applying the standard set forth in Logan, supra,
the facts of the instant case clearly indicate that the kidnapping committed by appellant was not "merely incidental" to the rape charge.
 {¶ 146} George Keeton began making threats to the lives of the victims. (T. at 254-57; 433-444). The victims began to plead for their lives. (T. at 441). Anna Adkins attempted to exit the car as it approached a stop sign. (T. at 261-63; 445). Appellant accelerated the car causing the door to hit the victim in the leg. (Id.). The car was speeding through stop signs with the doors now locked. (Id.). Under these circumstances, a separate animus necessary to sustain a conviction for rape and kidnapping was present. It was not error for the trial court to sentence the appellant separately for the rape and kidnapping charges.
 {¶ 147} Appellant's fifteenth assignment of error is overruled.
 XVI. {¶ 148} In his sixteenth assignment of error, appellant alleges that the trial court erred when it sentenced him to consecutive sentences. Appellant contends the trial court failed to make all the findings to impose consecutive sentences and that the findings made by the trial court were not supported by the record. We disagree.
 {¶ 149} Appellant did not receive the maximum sentence for any one offense. Appellant was sentenced for three (3) counts of aiding and abetting Rape to a term of eight (8) years on each count. Those sentences are concurrent. He was sentenced to a term of eight (8) years for aiding and abetting kidnapping. This count is consecutive to the sentences for the three rape charges. On the aiding and abetting Tampering with Evidence the court sentenced appellant to a two year term. This sentence is also consecutive to the other sentences. The misdemeanor sentences were made concurrent with the felony convictions. Accordingly appellant received an aggregate sentence of eighteen years.
 {¶ 150} Revised Code 2929.13(F) states, in relevant part: "Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under sections 2929.02 to2929.06, section 2929.14, or section 2971.03 of the Revised Code and except as specifically provided in section 2929.20 or2967.191 of the Revised Code or when parole is authorized for the offense under section 2967.13 of the Revised Code shall not reduce the terms pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code for any of the following offenses: * * * 2) Any rape, regardless of whether force was involved and regardless of the age of the victim, or an attempt to commit rape if, had the offender completed the rape that was attempted, the offender would have been subject to a sentence of life imprisonment or life imprisonment without parole for the rape * * *" Accordingly Appellant was subject to a prison term for the convictions on aiding and abetting rape.
 {¶ 151} Revised Code 2929.14(E)(5) states: "When consecutive prison terms are imposed pursuant to division (E)(1), (2), (3), or (4) of this section, the term to be served is the aggregate of all of the terms so imposed." We reject any suggestion that consecutive sentences may not exceed the maximum sentence allowable for the most serious offense of which a defendant is convicted. State v. Muntaser, 8th Dist. No. 81915, 2003-Ohio-5809; State v. Myers, 2nd Dist. No. 2001-CA-40, 2002-Ohio-6196.
 {¶ 152} In order to impose consecutive sentences, a trial court must comply with R.C. 2929.14 (E)(4) and R.C. 2929.19 (B) (2)(c). R.C. 2929.14 (E)(4) states as follows: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 153} "(a) The offender committed one or more multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Sections 2929.16, 2929.17,2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 154} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 155} "(c) The offender's history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crimes by the offender."
 {¶ 156} Revised Code 2929.19 (B)(2)(c) requires that a trial court state its reasons for imposing consecutive sentences.
 {¶ 157} In State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Supreme Court held a trial court is required to make its statutorily enumerated findings and give reason supporting those findings at the sentencing hearing.
 {¶ 158} The import of the decision in Comer, supra, is that the trial court must explain its decision to impose consecutive sentences to a defendant and base its decision on the statutorily enumerated criteria.
 {¶ 159} In the case at bar, the trial court stated at sentencing, contrary to appellant's assertions, that a Pre-sentence report was prepared in this case. (Sent. T., May 28, 2003 at 16). The Appellant was on felony probation at the time of this offense. (Id. at 7). The Court found that as a juvenile appellant violated his probation on six different occasions. (Id. at 14). The court further found that "the harm in these cases was great or unusual because of the brutal nature of the crime and because of the multiple victims involved in it." (Id. at 12). The court noted that the two victims were sexually assaulted, beaten, throw out of the car naked and in an unfamiliar location. (Id. at 10; 14-15). Both victims are being treated for Post Traumatic Stress Disorder. (Id. at 15). The trial court found that nonconsecutive prison terms do not adequately reflect the seriousness of appellant's conduct. (Id. at 12-13). Further appellant's criminal history shows that consecutive sentences are necessary to protect the public. (Id. at 13). The court detailed its reasons for imposing consecutive sentences at the sentencing hearing.
 {¶ 160} A through review of the sentencing hearing reveals that the trial court complied in all respects with Comer,supra, and R.C. 2929.14.
 {¶ 161} Appellant's sixteenth assignment of error is overruled.
 XVII. {¶ 162} In the seventeenth assignment of error, appellant asserts that the trial court's determination that he be classified as a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 163} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained inC.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 164} Revised Code § 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Revised Code § 2950.09(B)(3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 165} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 166} "(a) The offender's or delinquent child's age;
 {¶ 167} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 168} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 169} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 170} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 171} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 172} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 173} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 174} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 175} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 176} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. § 2950.09(C) (2)(b). Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998), 126 Ohio App.3d 485, 487.
 {¶ 177} The appellant did not present any expert testimony or evidence at the sentencing hearing. Nor did appellant's counsel request a continuance to prepare for the hearing.
 {¶ 178} The trial court noted that one of the victims was seventeen years old. (Sent. T. at 16). R.C. 2950.09(B)(3)(c). The offense involved multiple victims. (Id). R.C. 2950.09(B)(3) (d). Alcohol was used to impair the victims. (Id). R.C.2950.09(B)(3)(e). The Court considered appellant's prior criminal and juvenile record. (Id). R.C. 2950.09(B)(3)(f). The court found that the actions were a calculated pattern of abuse. (Id.). R.C. 2950.09(B)(3)(i).
 {¶ 179} We find clear and convincing evidence in the record to support the trial court's classification of Appellant as a sexual predator. State v. Nyel, 1st Dist. No. C-020640, 2003-Ohio-4961.
 {¶ 180} Appellant's seventeenth assignment of error is overruled.
 {¶ 181} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is hereby affirmed.
By Gwin, P.J., Wise, J., and Edwards, concur.
 {¶ 182} For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is hereby affirmed. Costs to appellant.