OPINION
{¶ 1} Defendant-Appellant Jason Flannery appeals from his conviction and sentence in the Richland County Court of Common Pleas on two counts of kidnapping, four counts of rape, two counts of felonious assault and one count of tampering with evidence. He further appeals his adjudication as a sexual predator.
 {¶ 2} The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On Sunday, August 18, 2002, twenty year old Anna Adkins and seventeen year old Ashley Gaines decided to drive from Shelby, Ohio, to Mansfield, Ohio, to make contact with an ex-boyfriend of Ms. Gaines.
 {¶ 4} Sometime around 8:00 p.m., Ms. Adkins drove her 1994 Ford Escort to a gas station so that Ms. Gaines could call her ex-boyfriend from the pay telephone. While on the telephone, one Richard Myers, a co-defendant herein, drove his 1995 Dodge Intrepid near the pay phone and began to make small talk with Ms. Gaines. Myers convinced Ms. Adkins and Ms. Gaines to follow him to 372 Bell Street, Mansfield, Ohio, in order to become better acquainted. Ms. Adkins parked her car directly in front of the residence.
 {¶ 5} The group drank beer and visited while at the residence.
 {¶ 6} The group left the residence on Bell Street to go to one George Keeton's house located on Seminole Avenue, Mansfield, Ohio. Mr. Keeton is another codefendant in this case. Myers drove the girls in his 1995 Dodge Intrepid to Keeton's residence.
 {¶ 7} At the residence, the girls met George Keeton, Jason Flannery (the Appellant in this matter), Sonny Flannery, and John Lykins. Consequently, Ms. Adkins, Ms. Gaines, Richard Myers, Appellant Jason Flannery, George Keeton and another person left the residence in a large white van. The party decided to travel to a club called "Fantasy Land" located in Bucyrus, Ohio. A stop was made at a Speedway gas station to purchase some pop to mix with Everclear, a highly potent alcoholic beverage. Keeton paid everyone's ten dollar cover charge, purchased a V.I.P. lap dance, and bought all the non-alcoholic beverages while at the club.
 {¶ 8} Sonny Flannery then drove everyone back to Mansfield where he stopped his vehicle at the Speedway located at Route 30 and Timble Road. John Lykins and Sonny Flannery left in Mr. Flannery's van. Richard Myers, George Keeton, Appellant Jason Flannery, Ms. Adkins, and Ms. Gaines continued to party. Mr. Keeton became upset about some missing money and drugs while at the gas station. After he calmed down, the five individuals agreed they would take a ride out into the country. Mr. Keeton once again became upset about his missing money and drugs. He turned to the girls in the backseat and began yelling at them that he was a thug and he was going to kill them both, he would never get caught, and their bodies would be dumped in a lake where no one would ever find them.
 {¶ 9} The girls were pleading for their lives. Ms. Adkins attempted to exit the motor vehicle as it was approaching a stop sign. Mr. Keeton told the appellant to speed up the vehicle. The appellant sped up the vehicle causing the car door to hit Ms. Adkins' leg. The car, with the doors now locked by Richard Myers, then proceeded to drive without stopping at any of the stop signs. At one point, Ms. Adkins and Ms. Gaines were allowed to get out of the car. They went to a home, knocked on a door, but there was no response. Myers' car circled around and located the girls. Myers and Keeton assured the girls that he had now calmed down. Ms. Adkins and Ms. Gaines did not know where they were at this time. They decided to get back into the vehicle to allow Myers to take them back to their car which was still located at the Bell Street residence. A short while later, Keeton again began complaining about his missing money and drugs. He told Ms. Adkins and Ms. Gaines to take off their clothes because he wanted to check for his missing money. Mr. Keeton tossed the girls clothing and a book bag belonging to Ms. Gaines out of the car. Some of the clothing was later found in Richland County, Ohio, by a deputy sheriff.
 {¶ 10} Keeton and Appellant Jason Flannery started punching the girls with closed fists, throwing approximately twelve blows, striking each girl approximately six times each in their faces. Myers turned off the car's interior lights and the headlights. Keeton then forced the girls to perform various sexual acts. Keeton and Appellant Jason Flannery inserted their fingers inside Ms. Adkins' vagina. Myers continued to drive the car. Keeton told Myers to stop the car so that they could toss Ms. Adkins out onto the street. Myers complied with this request. Appellant Jason Flannery held Ms. Gaines by her hair to prevent her from escaping from the vehicle.
 {¶ 11} Keeton then forced Ms. Gaines to perform fellatio upon him. Appellant Jason Flannery, who was in the back seat, began inserting his fingers inside of Ms. Gaines' vagina and anus.
 {¶ 12} Keeton then ordered Ms. Gaines to have oral sex with Myers and Appellant Jason Flannery. While still driving his car, Myers voluntarily opened up his pants and made his penis available for Ms. Gaines. Keeton forced Ms. Gaines to perform fellatio upon Myers and upon Appellant Jason Flannery. While this was occurring, Keeton inserted his fingers inside Ms. Gaines' vagina and anus.
 {¶ 13} Approximately forty-five minutes after Ms. Adkins was let go, Keeton told Myers to stop the car and Appellant Jason Flannery kicked Ms. Gaines out of the onto the street.
 {¶ 14} Myers then drove Keeton and Appellant Flannery back to 372 Bell Street, Mansfield, Ohio, where Ms. Adkins had left her car. Keeton and Appellant Flannery broke a window and moved the car down the street.
 {¶ 15} A short time later, Richard Myers and Appellant Jason Flannery were arrested by the Mansfield Police Department. Richard Myers was stopped for having an obstructed license plate. His car also matched a description put out in a police bulletin from Ashland County about a possible abduction.
 {¶ 16} Appellant's jury trial commenced in this matter on January 16, 2003.
 {¶ 17} At the conclusion of the State's case, Appellant moved for a Directed Verdict on the felonious assault and kidnapping accounts as to Ms. Adkins.
 {¶ 18} On January 22, 2003, the jury found Appellant Flannery guilty of four counts of rape, two counts of kidnapping, one count of aiding and abetting rape, two counts of felonious assault and one count, in the alternative, of tampering with evidence
 {¶ 19} On January 27, 2003, the defendant was sentenced to an aggregate term of twenty-eight years. The sentences on the kidnapping and the rape counts were to run consecutively.
 {¶ 20} On February 3, 2003, Appellant was also determined to be a sexual predator.
 {¶ 21} Appellant timely appealed and herein raises the following twelve assignments of error for our consideration:
 ASSIGNMENTS OF ERROR {¶ 22} "I. The court committed plain error when it allowed state's witness to give an opinion as to the veracity of another witness.
 {¶ 23} "II. The court committed plain error by admitting a letter alleged to be written from one co-defendant to the other co-defendant.
 {¶ 24} "III. The trial court committed prejudicial error in sentencing defendant/appellant to consecutive terms totaling 28 years.
 {¶ 25} "IV. The trial court committed prejudicial error by giving a non responsive and misleading instruction to the jury's question.
 {¶ 26} "V. The trial court committed plain error in sentencing defendant on the rapes and kinapings [sic] as same are allied offense [sic] of similar import.
 {¶ 27} "VI. The trial court committed plain error by failing to declare a mistrial due to prosecutor misconduct.
 {¶ 28} "VII. The defendant was denied effective assistance of counsel in violation of the Fifth and Sixth Amendments to the UNITED States Constitution.
 {¶ 29} "VIII. The guilty verdict on felonious assault was based upon evidence insufficient as a matter of law.
 {¶ 30} "IX. The trial court erred in refusing to grant defendant/appellant's Rule 29 motion for acquittal.
 {¶ 31} "X. Defendant/appellant was erroneously convicted of tampering with evidence when it was clear that it was not committed in richland county.
 {¶ 32} "XI. Clear and convincing evidence did not support a finding of sexual predator.
 {¶ 33} "XII. The trial court committed plain error by it's failure to instruct on all of the elements in counts II, IV and V of the indictment"
 I. {¶ 34} In his first assignment of error, Appellant argues that the trial court erred by permitting a S.A.N.E. nurse and emergency room physician to testify that the findings of each were consistent with the history given by Anna Adkins.
 {¶ 35} We have previously found this type of testimony is permissible. State v. Myers (June 9, 2004), 5th Dist. No. 03-CA-61, 2004-Ohio-3052, State v. Bragg (April 15, 2004), 5th Dist. No. 2003-CA-00065; State v. Crum (Oct. 26, 1998), 5th Dist. No. 97-CA-0134.
 {¶ 36} Appellant's First Assignment of Error is overruled.
 II. {¶ 37} In his second assignment of error the appellant argues that the trial court erred by not excluding from evidence at trial a letter written from one co-defendant to another co-defendant. We disagree.
 {¶ 38} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St. 3d 173, 510 N.E. 2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St. 2d 151, 157, 404 N.E.2d 144.
 {¶ 39} Corrections Officer Karla Likes found a letter in co-defendant George Keeton's jail cell, written by co-defendant Richard Myers. The State introduced the letter at trial to establish that Keeton, Myers and Appellant Flannery had engaged in a conspiracy to avoid prosecution and conviction. The trial court admitted the letter, into evidence on the basis that it contained statements of a co-conspirator made in furtherance of a conspiracy.
 {¶ 40} Appellant Flannery maintains that there is no evidence that he conspired with Keeton and Myers and further maintains that any conspiracy that may have existed ended when the parties were arrested.
 {¶ 41} As to appellant's argument, we find the evidence supports the conclusion that Appellant was involved in a conspiracy and that such conspiracy did not end when the parties were arrested. Instead, the letter from Myers to Keeton, informed Keeton how he should testify in order to avoid conviction of the crimes. The Ohio Supreme Court has recognized the admissibility of this type of evidence in State v.DeRighter (1945), 145 Ohio St. 552. The Court stated:
 {¶ 42} "* * * [T]he single fact that the crimes already had been committed does not render this evidence inadmissible if the acts and declarations occurred during the pendency of the unlawful enterprise and in furtherance of the common object." Id. at 558.
 {¶ 43} In support of this conclusion, the Court cited 2 Wharton on Criminal Evidence, 11 Ed., 1205, Section 715, which provides:
 {¶ 44} "The acts and declarations of a conspirator are admissible against a coconspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the offense, but also its subsequent concealment. The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication." Id. at 558-559.
 {¶ 45} Thus, we conclude the trial court properly admitted Exhibit 21 as the conspiracy had not terminated following the parties' arrests. Instead, Myers and Keeton continued to conspire in order to avoid conviction.
 {¶ 46} The letter specifically mentions "my car." It is written from the perspective of the person driving the car. Many of the facts stated in the letter mirror the sequence of events testified to by the victims. The letter mentions the other co-defendants by name. The letter mentions that "John Boy and Sonny" left and "me [Myers], you [Keeton] and Jason and the girls still wanted to get drunk . . . so we get into my car
 {¶ 47} We find that there was sufficient evidence to allow this letter to be admitted into evidence and that the trial court did not abuse its discretion in admitting same.
 {¶ 48} Accordingly, we overrule appellant's second assignment of error.
 III. {¶ 49} In his third assignment of error, appellant argues that the trial court erred in ordering him to serve consecutive sentences totaling twenty-eight years. We disagree.
 {¶ 50} Appellant was sentenced as follows:
 {¶ 51} Count One: Kidnapping (Anna Adkins) (F1): 6 years, consecutively;
 {¶ 52} Count Two: Kidnapping (Ashley Gaines) (F1): 8 years, consecutively;
 {¶ 53} Count Three: Rape (Anna Adkins) (F1): 6 years, consecutively;
 {¶ 54} Count Four: Rape (Anna Adkins) (F1): 6 years, concurrently;
 {¶ 55} Count Five: Rape (Ashley Gaines) (F1): 8 years, consecutively;
 {¶ 56} Count Six: Rape (Ashley Gaines) (F1): 8 years, concurrently;
 {¶ 57} Count Seven: Tampering with Evidence (F3): 1 year, concurrently;
 {¶ 58} Count Eight: Felonious Assault (Anna Adkins) (F2): 3 years, concurrently;
 {¶ 59} Count Nine: Felonious Assault (Ashley Gaines) (F2): 3 years, concurrently.
 {¶ 60} Accordingly appellant received an aggregate sentence of twenty-eight years.
 {¶ 61} In order to impose consecutive sentences, a trial court must comply with R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c). R.C. 2929.14
(E)(4) states as follows:
 {¶ 62} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 63} "(a) The offender committed one or more multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Sections 2929.16, 2929.17, 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 64} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 65} "(c) The offender's history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crimes by the offender."
 {¶ 66} Revised Code 2929.19(B)(2)(c) requires that a trial court state its reasons for imposing consecutive sentences.
 {¶ 67} In State v. Comer, 99 Ohio St. 3d 463, 2003-Ohio-4165, the Supreme Court held a trial court is required to make its statutorily enumerated findings and give reason supporting those findings at the sentencing hearing.
 {¶ 68} The import of the decision in Comer, supra, is that the trial court must explain its decision to impose consecutive sentences to a defendant and base its decision on the statutorily enumerated criteria.
 {¶ 69} In the case at bar, the two victims were sexually assaulted, beaten, thrown out of the car naked and in an unfamiliar location. At the sentencing hearing, the trial court stated that it found that "the harm caused was great and unusual, both because of the nature of the crimes and the multiplicity of the victims involved in these crimes." (T. at 793). The Court stated that it had "nine crimes for two different victims, which constituted the violent gang rape of two local women." Id. The Court determined that, even though Appellant had no prior criminal record, based on the brutality of the crimes, "the shortest terms for these particular crimes would clearly demean the seriousness of these crimes, and would be inadequate to protect the women of this community." The court detailed its reasons for imposing consecutive sentences at the sentencing hearing.
 {¶ 70} A through review of the sentencing hearing reveals that the trial court complied in all respects with Comer, supra, and R.C. 2929.14.
 {¶ 71} Appellant's third assignment of error is overruled.
 IV. {¶ 72} In his fourth assignment of error, Appellant maintains that the trial court erred by giving a non responsive and misleading instruction to the jury's question. We disagree.
 {¶ 73} During deliberations, the jury sent the following question to the court: "Is aiding and abetting to be considered in each of the charges against Mr. Flannery?"
 {¶ 74} The court's response to said question was:
 {¶ 75} "The question for you is to decide in each of these cases is whether the prosecutor did prove that Mr. Flannery committed every one of the elements of the crime as I have defined them for you. If the prosecutor did prove that, the fact that other people were also involved in the crimes does not relieve the Defendant of responsibility for the crime or crimes proved." (T. at 776-777).
 {¶ 76} It is within the sound discretion of the trial court to provide supplemental instructions in response to a question from the jury. Statev. Maupin (1975), 42 Ohio St.2d 473, 330 N.E.2d 708, * * * paragraph four of the syllabus.
 {¶ 77} Upon review, we do not find that the court's answer is non-responsive or misleading nor do we find that such constitutes reversible error.
 {¶ 78} Appellant's fourth assignment of error is overruled.
 V. {¶ 79} In his fifth assignment of error appellant maintains that the trial court erred by not merging the rape and kidnapping counts for sentencing purposes. We disagree.
 {¶ 80} In State v. Brown (1984), 12 Ohio St.3d 147, 456 N.E.2d 889, the Ohio Supreme Court set forth the following test to determine whether kidnapping and rape are subject to merger: "[i]n State v. Donald (1979),57 Ohio St.2d 73, 386 N.E.2d 1341 [11 O.O.3d 242], this court ruled that rape and kidnapping were offenses of similar import for purposes of application of R.C. 2941.25(A). In State v. Logan (1979), 60 Ohio St.2d 126, we outlined under what circumstances convictions for both kidnapping and another offense of the same or similar kind would be allowed to stand. The syllabus in Logan, supra, states in part:
 {¶ 81} `In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 {¶ 82} `(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions; * * *.'
 {¶ 83} Thus, the general rule is that where the kidnapping offense and underlying similar offense are committed separately and with a separate, different animus, convictions for both offenses will be sustained. See, also, State v. Price (1979), 60 Ohio St.2d 136, paragraph five of the syllabus." Id. at 150-151.
 {¶ 84} The question becomes whether appellant possessed an animus in committing the rape offense separate from the kidnapping offense.
 {¶ 85} Applying the standard set forth in Logan, supra, the facts of the instant case clearly indicate that the kidnapping committed by appellant was not "merely incidental" to the rape charge.
 {¶ 86} George Keeton began making threats to the lives of the victims. (T. at 254-57; 433-444). The victims began to plead for their lives. (T. at 441). Anna Adkins attempted to exit the car as it approached a stop sign. (T. at 261-63; 445). Codefendant Myers accelerated the car causing the door to hit the victim in the leg. (Id.). The car was speeding through stop signs with the doors now locked. (Id.). The victims were abducted, confined and forced to ride in the car with Appellant and the other two codefendants for a significant period of time before and after the rapes which occurred. During this time, the victims were subjected to a risk of harm from the operation of the automobile separate and distinct from the rape injuries. See State v. Henry (1987),37 Ohio App. 3d 18-19.
 {¶ 87} Under these circumstances, a separate animus necessary to sustain a conviction for rape and kidnapping was present. It was not error for the trial court to sentence the appellant separately for the rape and kidnapping charges.
 {¶ 88} Appellant's fifth assignment of error is overruled
 VI. {¶ 89} In his sixth assignment of error, appellant maintains that the trial court erred by failing to declare a mistrial due to prosecutorial misconduct. We disagree.
 {¶ 90} More specifically, appellant argues that the prosecutor engaged in misconduct by crying during his opening statement.
 {¶ 91} App. R. 12(A)(2) states that "the court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *."
 {¶ 92} In support of his argument, Appellant cites us to page 173 of the transcript, where, during his opening statement to the jury, the prosecutor said "I apologize. I've tried many cases, I've never had this happen."
 {¶ 93} After reviewing the record in its entirety, we find that no objection was made by appellant with regard to the alleged weeping of the prosecutor during opening statements, nor were any objections made regarding specific behavior of the prosecutor throughout the remainder of the trial. Furthermore, appellant did not request that the court instruct the jury that the actions of the prosecutor were unprofessional, giving an inference to the jury that he believes in the case so much that he has to cry before them.
 {¶ 94} Where the record is unclear, or does not support, the error on which the assignment of error is based, this court, in accordance with App.R. 12(A)(2), may disregard appellant's assignment of error.
 {¶ 95} Furthermore, a conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge,75 Ohio St.3d 136, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647,94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 96} Assuming arguendo, that the prosecutor did weep during his opening statement, we do not find that such conduct rises to the level of prejudicial error necessary to find that Appellant was deprived of a fair trial.
 {¶ 97} Clearly, the jury was not swayed or influenced by the prosecutor's statements.
 {¶ 98} Appellant's sixth assignment of error is overruled.
 VII. {¶ 99} In his seventh assignment of error, appellant argues that he was denied the effective assistance of counsel. We disagree.
 {¶ 100} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 101} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 102} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhartv. Fretwell (1993), 506 U.S. 364, 370.
 {¶ 103} Further, both the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."Bradley at 143, quoting Strickland at 697. It is based upon this standard that we review appellant's five arguments in support of his Seventh Assignment of Error.
 {¶ 104} Appellant argues that his counsel was ineffective in failing to object to the following: (1) the opinion by a nurse that a witness was telling the truth, (2) the admission of the Exhibit 21, the letter by a co-conspirator, (3) the alleged weeping by the prosecutor, (4) the lack of venue concerning the tampering with evidence charge, and (5) the consecutive sentences for the rape and kidnapping charges.
 {¶ 105} Having previously failed to find that any of the above was in fact error, we likewise find that counsel was not ineffective in failing to object to same at trial. We therefore find appellant's seventh assignment of error not well-taken.
 {¶ 106} Appellant's seventh assignment of error is denied.
 VIII. {¶ 107} In his eighth assignment of error, Appellant argues that his conviction on the felonious assault charge was based on insufficient evidence. We disagree.
 {¶ 108} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 109} "An appellate courts function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 110} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1) which states, "No person shall knowingly * * * [c]ause serious physical harm to another . . ."
 {¶ 111} Appellant argues that the testimony did not support that he caused serious physical harm to the victims, arguing that co-defendant Keeton committed the most severe punching. Appellant further claims that, at best, the evidence only supported a finding of simple assault.
 {¶ 112} Upon review, we find that Anna Adkins testified that Appellant grabbed her by the hair when she refused to take off her clothes. (T. at 209). She further stated that Appellant punched her four to five times in the side of the head while co-defendant Keeton was striking her in the face. (T. at 211). She testified that she had a bump on the side of her head and a bruise behind her ear, in addition to a chipped tooth and severe headaches for about a month after the incident. (T. at 224).
 {¶ 113} Ashley Gaines testified that Appellant also struck her four to five times in the face. (T. at 324-325). She further testified that she her nose began to bleed as a result of the punches and that she has had ongoing problems with nosebleeds as a result of same. (T. at 326, 335-336).
 {¶ 114} Testimony was also presented by Dr. Cover, who examined both of the victims when they came to the emergency room at Ashland Samaritan Hospital. Dr. Cover testified that he diagnosed Anna with multiple facial contusions, a lip abrasion, a nose bleed and swelling of the nose. (T. at 382). He later diagnosed Ashley as having a deviated septum after performing an x-ray. (T. at 385). He stated that Ashley's deviated septum and Anna's chipped tooth are permanent conditions. (T. at 386).
 {¶ 115} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's convictions were based upon insufficient evidence.
 {¶ 116} Appellant's eighth assignment of error is denied.
 IX. {¶ 117} In his ninth assignment of error appellant argues that the trial court erred in refusing to grant his motion for acquittal. We disagree.
 {¶ 118} We review the denial of a Crim.R. 29 motion for acquittal under the same standard that appellate courts use to review a sufficiency of the evidence claim. State v. Rhodes, 7th Dist. No. 99 BA 62,2002-Ohio-1572, at ¶ 9; State v. Carter, 72 Ohio St.3d 545, 553,1995-Ohio-104. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355. In essence, sufficiency is a test of adequacy. Thompkins, 78 Ohio St.3d at 386,678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113, 684 N.E.2d 668.
 {¶ 119} Appellant argues that there was insufficient evidence to convict him of kidnapping.
 {¶ 120} Upon review, we find that testimony was presented that when Anna Adkins attempted to open the door and get out of the moving vehicle, Appellant and codefendant Keeton yelled to the driver, co-defendant Myers, to speed up so that she could not get out. (T. at 212). Ashley also testified that Appellant grabbed either the door or Anna's arm to prevent her from escaping. (T. at 327-328). Additionally, the testimony and evidence presented at trial also established that the victims were given strong alcoholic beverages by the men earlier in the evening. (T. at 197-198, 310-311).
 {¶ 121} Thus, when viewing the evidence in the light most favorable to the State, a rational trier of fact could have concluded that Appellant committed the crime kidnapping. Hence, the trial court did not error in denying the Crim.R. 29.
 {¶ 122} Appellant's ninth assignment of error is overruled.
 X. {¶ 123} In his tenth assignment of error appellant argues that Richland County was not the proper venue to prosecute him. We disagree.
 {¶ 124} Appellant argues that the event which constituted the tampering with evidence charge, that being appellant rubbing what later turned out to be blood off of his pants while being held in an interview room, occurred in Ashland County
 {¶ 125} In State v. Beuke (1988), 38 Ohio St.3d 29, 41, 526 N.E.2d 274,287, the Ohio Supreme Court stated: "[t]his court articulated Ohio law relevant to such claims in State v. Draggo (1981), 65 Ohio St.2d 88, 89-91, 19 O.O.3d 294, 295-296, 418 N.E.2d 1343, 1345-1346. The relevant statute, R.C. 2901.12, provides, in subsection (G), that venue lies in any jurisdiction in which an offense or any element of an offense is committed; and further provides, in subsection (H), that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. Prima facie evidence of a course of criminal conduct may be established through proof the offenses involved the same or similar modus operandi.
R.C. 2901.12(H) (5)."
 {¶ 126} Additionally, the crimes occurred in a moving vehicle. R.C.2901.12(B) states: "When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed."
 {¶ 127} There is no dispute that the appellant's car traveled through Richland and Ashland counties. Venue was therefore proper in Richland County.
 {¶ 128} Appellant's tenth assignment of error is overruled.
 XI. {¶ 129} In the eleventh assignment of error, appellant asserts that the trial court's determination that he be classified as a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 130} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained in C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 131} Revised Code § 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Revised Code § 2950.09(B) (3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 132} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 133} "(a) The offender's or delinquent child's age;
 {¶ 134} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 135} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 136} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 137} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 138} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 139} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 140} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 141} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 142} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 143} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. § 2950.09(C) (2) (b). Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998), 126 Ohio App.3d 485, 487.
 {¶ 144} The appellant did not present any expert testimony or evidence at the sentencing hearing. Nor did appellant's counsel request a continuance to prepare for the hearing.
 {¶ 145} The trial court noted that one of the victims was seventeen years old. (T. at 799). R.C. 2950.09(B)(3)(c). The offense involved multiple victims. (T. at 799). R.C. 2950.09(B)(3)(d). Alcohol was used to impair the victims. Id. R.C. 2950.09(B)(3)(e). The Court considered appellant's prior juvenile record which involved at least seven assault offenses. (T. at 798-799). R.C. 2950.09(B) (3)(f). The court found that the actions were a calculated pattern of abuse. (T. at 799). R.C.2950.09(B)(3)(i).
 {¶ 146} We find clear and convincing evidence in the record to support the trial court's classification of Appellant as a sexual predator. Statev. Nyel, 1st Dist. No. C-020640, 2003-Ohio-4961.
 {¶ 147} Appellant's eleventh assignment of error is overruled.
 XII. {¶ 148} In his twelfth and final assignment of error, appellant maintains that the trial court committed plain error by failing to instruct on all of the elements in Counts II, IV and V of the indictment. We disagree.
 {¶ 149} Appellant claims that the trial court erred in failing to instruct the jury on aiding and abetting.
 {¶ 150} The record indicates defense counsel failed to object to the instructions before the jury retired to deliberate. Crim.R. 30 provides, in pertinent part:
 {¶ 151} "(A) Instructions; error; record
 {¶ 152} "* * *
 {¶ 153} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * *"
 {¶ 154} Errors not brought to the trial court's attention are waived unless such errors rise to the level of "plain error".
 {¶ 155} "Plain error" is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Statev. Underwood (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332.
 {¶ 156} A jury instruction does not constitute plain error unless the outcome of the trial would clearly have been different but for the error. Id. at paragraph two of the syllabus. See also State v. Moreland
(1990), 20 Ohio St.3d 58, 62. In addition, "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus.
 {¶ 157} Although we find no error in the trial court's failure to give the aiding and abetting instruction, even if we did find error, the overwhelming evidence of appellant's guilt renders any error harmless and not plain.
 {¶ 158} In this case, appellant has not shown that the outcome of the trial would certainly be different if the court had given a different version of the instruction.
 {¶ 159} We therefore find said assignment of error not well-taken.
 {¶ 160} Appellant's twelfth assignment of error is overruled.
 {¶ 161} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is hereby affirmed.
Boggins, P.J., Gwin, J., and Edwards, concur
 JUDGMENT ENTRY {¶ 162} For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is hereby affirmed. Costs to appellant.